[Civ. No. 32239.   Second Dist., Div. Two.   Dec. 11, 1968.]

CARL E. MILLYARD et al., Plaintiffs and Appellants, v. L. C. FAUS et al., Defendants and Respondents.

*Assigned by the Chairman of the Judicial Council.

R. D. Sweeney and John L. Mace for Plaintiffs and Appellants.

Demetriou & Del Guercio and Richard A. Del Guercio for Defendants and Respondents.

NUTTER, J. pro tem.\*—This is an appeal by the plaintiffs from a judgment in favor of the defendants and respondents L. C. Faus and Mary G. Faus and Lambert S. Whitcomb in plaintiffs' action to quiet title to real property of three parcels of land which were formerly burdened with an easement for railroad purposes.

Appellants Carl E. Millyard and Arleen E. Millyard are the owners of a parcel of land in the City of Glendora, County of Los Angeles, which was acquired by a deed dated March 16, 1953, describing the land by metes and bounds, with dimensions of 75 feet along Michigan Avenue and 140 feet along Meda Avenue in Glendora. Their predecessors had acquired the land from the Glendora Land Company in a deed dated February 14, 1910. The lands in question include three tracts. Tract No. 1 included the railroad right-of-way but did not directly abut appellants' property. The other two tracts were utilized for a depot and driveway to the street but did abut appellants' property on the south and east side. A rough sketch of the disputed property is as follows. [See P. 79.]

Appellants claim of title is not predicated upon adverse possession, nor upon an express grant, nor even on a monument theory, rather upon a theory that because their parcel physically abuts a portion of lands which were conveyed by a common grantor, Glendora Land Company, for railroad easement purposes, they are presumed to be the owners of *all* the railroad lands to the exclusion of respondents L. C. Faus and Mary G. Faus, who trace their title to the original grantor to the railroad, and to the exclusion of respondents Jack P. Buzzard and Nadeen V. Buzzard whose property also abuts the lands directly against the railroad right-of-way. Appellants' theory is grounded upon the claimed existence of a common law presumption, partially codified, that a conveyance of land which abuts lands burdened by a railroad easement also conveys the land to the center of the easement.

The ultimate finding upon which the judgment is based is a finding that the Glendora Land Company, the original subdivider, in its 1910 deed to appellants' predecessor, did not intend to convey the fee title to any land underlying the

---

\*Assigned by the Chairman of the Judicial Council.

easement granted to the Los Angeles Inter-Urban Railway Company for railroad purposes.[1]

The principal question for determination is whether this finding is supported by any substantial evidence.

The trial judge found that Glendora Land Company is the common source of the title upon which all of the parties base their respective adverse claims. By deed dated February 14,

---

[1]In the case of *Faus* v. *Nelson*, 241 Cal.App.2d 320 [50 Cal.Rptr. 483], the court found a similar easement had been extinguished by abandonment in 1951. However, in this case the parties stipulated that the railroad easement was abandoned on July 10, 1956. Respondents, adopting the date of extinguishment in *Faus* v. *Nelson*, argue that at the time of a conveyance from appellants' predecessor the railroad easement had been abandoned and was extinguished.

1910, Glendora Land Company conveyed to William H. Griffin certain real property particularly described by said deed as follows:

"Commencing at the intersection of the East line of Michigan Ave. with the South line of Meda Ave. said intersection being 60 ft. Southerly from the S.W. cor. of Lot 9, Block X and 100 ft. Easterly from the N.E. Co — Lot one, Block 'DD'; thence Easterly along said South line of Meda Ave. 140 feet to a point; thence Southerly at right angles to said South line of Meda Ave. 75 feet to a point; thence Westerly parallel with said South line of Meda Ave. 140 feet, to a point on the East line of Michigan Ave., thence Northerly along said East line of Michigan Ave. 75 feet, to the point of beginning in the Northwest corner of Block 'CC', according to the map of said tract recorded in the office of the County Recorder of Los Angeles County, in Book 15, P. 75-76 of Miscellaneous Records of Los Angeles County."

He found that plaintiffs are successors in title to William H. Griffin as to the real property by mesne conveyances of the same description as that contained in the deed to William H. Griffin. By deed dated June 1, 1906, Glendora Land Company conveyed to Los Angeles Inter-Urban Railway Company an easement in, over, upon and across the real property described hereinabove, together with other lands, for railway purposes. Subsequent to the date of the deed and prior to the commencement of this action, Pacific Electric Railway Company, as successor to Los Angeles Inter-Urban Railway Company, abandoned its use of the real property described in said deed for railway or for any other purpose and all tracks and structures relating to the use of said real property by Pacific Electric Railway Company have been removed from said property.

By deed dated February 2, 1955, Glendora Land Company conveyed to respondents L. C. Faus and Mary G. Faus (in a deed executed by certain individuals purporting to act as trustees of the land company) all of its right, title and interest in and to the real property claimed by appellants.

In the deed from Glendora Land Company to appellant Millyard's predecessor in interest, the grantor did not intend to convey the fee title to any land underlying the easement granted to Los Angeles Inter-Urban Railway Company for railroad purposes.

The trial judge further found that neither the lands depicted on the map of Glendora Tract as "Reservation for S.P.R. Right of Way" or "Depot Ground" nor the lands

conveyed to Los Angeles Inter-Urban Railway Company, nor any portion thereof, were designated in the deed to Millyard's predecessor in interest as a monument therein; nor were the lands conveyed to Millyard's predecessor described as bounded by the lands depicted on the map of Glendora Tract as "Reservation for S.P.R. Right of Way" or "Depot Ground" or by the lands conveyed to the Los Angeles Inter-Urban Railway Company or any portion thereof.

The trial court found that by the 1903 deed to respondents Buzzards' predecessor, Glendora Land Company intended to convey to the grantees a one-half interest in the strip 80 feet in width labeled on the map of Glendora Tract as "Reservation for S.P.R. Right of Way." The 80-foot strip constituted and was intended by Glendora Land Company as a monument.

Based upon these findings the court concluded that respondents Buzzard, et al., were the owners of the southerly forty feet of this strip abutting their lot. Appellants do not claim any error in the award as to the respondents Buzzard, et al.

## THE ATTACK ON THE TRUSTEES' DEED

Appellants' objection to the 1955 deed from the trustees of the land company to respondent Faus is based upon a claim that the order of the superior court appointing the trustees was void for want of jurisdiction; that the superior court did not have jurisdiction to make its order appointing the trustees because it affirmatively appears from the judgment roll that notice of the hearing was not given in compliance with section 4806 of the Corporations Code, i.e., that no copy of the notice of hearing was mailed to the corporation or to the persons having charge of its assets.

The Petition for Appointment of Trustees was filed by Lambert S. Whitcomb on November 14, 1951, and alleges: "That Glendora Land Company was incorporated in California March 19, 1887 for a period of fifty years; that on or about December 14, 1922, said corporation ceased to do business; that on December 14, 1922, C. S. Whitcomb was the owner of all of the capital stock of Glendora Land Company; that recently it has been discovered that there are assets belonging to the corporation and it is necessary to appoint trustees for said corporation; that all of the directors of said corporation are dead; that petitioner Lambert S. Whitcomb is the sole surviving heir of C. S. Whitcomb and as such as interested in said corporation and there are no creditors of

said corporation; that said corporation was dissolved by the expiration of its term of existence; that no other trustees have been appointed. The petitioner prays for the appointment of Irene B. Pruhs, *et al.*, as trustees and that notice be given, etc.''

Section 4806 of the Corporations Code provides that upon the filing of such petition the court shall fix the date of the hearing and shall order the giving of such notice as may be reasonable by personal service or by publication for three consecutive weeks *and* by mailing a copy of the notice to the corporation and to the known directors and officers and persons named in the petition as directors of the corporation at the time of its dissolution *or* to the person having charge of its assets.

The order appointing the trustees is dated December 21, 1951, and finds that notice of hearing on the petition, ''was published in the Westlake Post once a week for a period of three consecutive weeks and that each of said proposed trustees had notice of the hearing of said petition . . . and that all persons interested were directed to appear and show cause, if any they had, why an order granting said petition should not be made.'' Based thereon, the court appointed Irene B. Pruhs, et al., as trustees of Glendora Land Company.

Insofar as appellants are concerned this record shows adequate and reasonable notice was given. The petition stated that Whitcomb was the sole surviving heir. There was no one else to receive notice. California case law and the Corporations Code provides that after dissolution or where a term has expired a corporation may dispose and convey property where assets, inadvertent or otherwise, are omitted from the winding up of the corporation. (13 Cal.Jur.2d, §§ 503, 507, pp. 213-214.) Accordingly, contrary to appellants' contention there was no failure to give proper or reasonable notice apparent on the judgment roll.

### Appellants' Claim of Title

The right, title and interest of third persons not parties to this action were not determined or adjudicated in this judgment.

In a quiet title action the plaintiff must prevail on the strength of his own title, and not on the weakness of defendant's title. (*Knoke* v. *Knight*, 206 Cal. 225 [273 P. 786]; *Sears* v. *Willard*, 165 Cal. 12 [130 P. 869]; *Mandel* v. *Great Lakes Oil etc. Co.*, 150 Cal.App.2d 621 [310 P.2d 498].)

Here we hold that appellants' claim must fall

because of a defect and a lack of strength in their claim of title. Even if appellants' arguments concerning respondents' deeds were correct they do not fulfill appellants' burden in establishing his own strength of title in these lands. Appellants concede, as they must, that the metes and bounds description of their lands did not in any way designate as a boundary or monument of their property or railroad easement. Appellants argue that *Faus* v. *Nelson, supra,* announces a rule of law that where there is a conveyance of land which abuts lands burdened with a railroad easement, it is presumed to convey to the center thereof unless a contrary intent appears from the deed. Appellants then argue that the presumption is not rebutted by their metes and bounds description.

Appellants seek to extend the *Faus* v. *Nelson* rule beyond the holding of that case. Merely because a property abuts *any* railway easement does not, as appellants claim, give rise to a presumption that they own to the center of the easement. The monument doctrine presumes an intent to grant to the middle of the monument (road, railway easement or stream) because the conveyance designates the object as a monument or boundary.

In *Faus* v. *Nelson,* it was determined that the railroad *"right-of-way"* was a monument; the description which, by the application of the rule of construction in sections 831 and 1112 of the Civil Code and section 2077, subdivision 4. of the Code of Civil Procedure was applicable to easements for railroad *rights-of-way* adjacent to the land, carried to the center of the right-of-way. Following the rule of *Faus* v. *Nelson,* the trial court determined correctly that respondents Buzzard were the owners of the southerly one-half of the railroad right-of-way (Tract No. 1) abutting said lot 9, Block CC but held that the *Faus* v. *Nelson* rule did not apply to appellants' property.

Appellants claim that the monument theory is irrelevant to their case because they rely upon the common law rule partially codified in section 831 of the Civil Code that an owner of land which is actually bounded by a road, street, or railway right-of-way is presumed to own to the center of the way but the contrary may be shown; that the boundary of appellants' land was, in fact, a railway easement and the presumption arises from that fact; that while appellants' land is not shown upon the recorded subdivision map as abutting the railway easement, in actuality it did abut upon the

railway easement created by the 1906 deed from the original subdivider to the Los Angeles Inter-Urban Railway Company.

Of course, where there is any evidence either direct or indirect, contradicted or uncontradicted, which supports a trial court finding it must be sustained on appeal. (*Richter* v. *Walker*, 36 Cal.2d 634 [226 P.2d 593]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].)

In cases "where there is no conflict in the extrinsic evidence (and therefore no problem of its credibility, but only of inferences to be drawn therefrom), the reviewing court 'must make an independent determination of the meaning.'" (*Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861 at p. 866 [44 Cal.Rptr. 767, 402 P.2d 839]; Witkin, Cal. Procedure (1967. Supp.) § 89A, pp. 942-943.)

The trial court's findings concerning the intent of a grantor and grantees and the court's legal conclusions were correct.

A metes and bounds description in a deed to property which actually abuts a street or highway is some evidence of the grantor's intent to withhold any interest in the abutting street or highway, and use of metes and bounds description is of itself some evidence to rebut the presumption. (*City of Redlands* v. *Nickerson*, 188 Cal.App.2d 118 [10 Cal.Rptr. 431]; *Speer* v. *Blasker*, 195 Cal.App.2d 155 [15 Cal.Rptr. 528]; *Hixson* v. *Jones*, 253 Cal.App.2d 860 [61 Cal.Rptr. 883].)

The general rule is that where lots are sold by number and *not* by metes and bounds and reference is made to a registered map and plat which show that the property abuts on a street or highway, the conveyance carries title to the center of the street. (8 Cal.Jur.2d, § 8, pp. 788-789.) Every common law jurisdiction except Maine and England has applied this rule to highways and railroad easements. (*Faus* v. *Nelson, supra*; Ogden's California Real Property Law (1956) pp. 483-484.)

The monument rule is an aid to construction of the intent of the grantor and is not mandatorily applicable in the face of convincing proof of contrary intent. (*Freeman* v. *Affiliated Property Craftsmen*, 266 Cal.App.2d 723 [72 Cal. Rptr. 357].)

However, in the case at bench the lands designated as "Reservation for S.P.R. Right of Way" do not abut the appellants' lands at any point. The objects which appellants must claim constitute the boundaries (depot ground or driveway reservation) are not designated for any purpose in the deed describing the parcel. A boundary falling in the center

of the depot or driveway grounds is inconsistent with the careful metes and bounds description in the deed.

Recognizing that the purpose here is to ascertain the intent of the grantor, it would seem abundantly clear that the holding of the trial judge that the lands conveyed to appellants' predecessor consisted of a lot 75' x 140' and no more, was correct.

In *Warden* v. *South Pasadena Realty etc. Co.,* 178 Cal. 440, 442 [174 P. 26], the case involved title to lands described in a sheriff's deed which described the land conveyed by a description as follows:

" 'Beginning at a point on the east line of Lot 6, 150 feet north of the southeast corner of said lot; thence west 150 feet on a line parallel with the southerly line of Lots 3, 4, 5 and 6; thence north, parallel with the easterly line of lot 6 to a point on the southerly line of Foothill street; thence easterly along the southerly line of Foothill street to the northeast corner of said lot; thence southerly along the easterly line of lot 6 to the place of beginning; said lots laid down and delineated on map of Oaklawn Addition Tract as per map recorded in Book 11, page 53, in the office of the county recorder of Los Angeles county.' "

Under the above description the court held that the grantee did not receive title to the center of the street. Thus, though depicted on the tract map, the street was not a monument described in the deed carrying title to the center.

In *Berton* v. *All Persons,* 176 Cal. 610 [170 P. 151], the legal description in metes and bounds giving the side lines of the lots as boundaries was held to be the type of description that rebuts the presumptions in Civil Code sections 831 and 1112. There the court points out that an assumption that the boundary was the center of the street is directly contradicted by the precise measurements of the land set forth in the deed.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.