Rockingham
No. 82-364

HENRY BROWN & a.

v.

JOHN E. RINES & a.

July 13, 1983

*Earl L. Kalil, Jr.*, and *Robert G. Wines*, of Northwood, by brief for the plaintiffs.

*Barrett & McNeill P.A.*, of Dover (*John T. Barrett* on the brief and orally), for the defendants John E. and E. Janice T. Rines.

DOUGLAS, J.  The issue in this boundary dispute appeal is whether the court below properly determined the location of the common boundary separating the properties of the plaintiffs, Henry and Eleanor Brown, and the defendants John E. and E. Janice T. Rines in Nottingham. We affirm.

The source of the controversy in this case can be traced back to common grantors through the chains of title to the two properties. In 1962, Henri H. and Georgette A. Cote conveyed by deed to Richard B. Allen, the Rineses' predecessor in title, a parcel of land described as follows:

> "Beginning on the northerly side of Gebig Road, so-called, at land of Peter Jurgeson, and thence running westerly by said Gebig Road, 500 feet to an iron stake in the ground; thence turning and running northerly by land of Henri H. and Georgette A. Cote, 640 feet, more or less, *to an iron stake in the ground; thence turning and running easterly by said Cote land along a stone wall, 500 feet, more or less, to a corner in said wall;* thence turning and running southerly by said Jurgeson land, along a stone wall, to Gebig Road at the point of beginning."

(Emphasis added.) (See diagram attached to this opinion.) This description of the property remained identical in each subsequent deed in the Rineses' chain of title.

Sixteen days after the conveyance to Richard Allen, the Cotes conveyed a contiguous parcel to the plaintiffs' predecessors in title, Kenneth J. and Ruth L. Jacobson, by a deed containing the following description:

> "Beginning on the northerly side of Gebig Road, so-called, at land of Richard B. Allen, and thence running westerly by Gebig Road, 600 feet, more or less, to a stone

wall at land now and formerly of John W. Demeritt; thence turning and running northerly by said stone wall and by land now or formerly of John W. Demeritt and land now or formerly of Carrie W. Brown to the channel of North River; thence turning and running easterly by the channel of North River to a stone wall at land now or formerly of Peter Jurgeson; thence turning and running by said stone wall and land of Jurgeson *to a stone wall at said land of Richard B. Allen; thence turning and running westerly by said stone wall and land of said Allen, 500 feet to an iron stake in the wall;* thence turning and running southerly by said stone wall and land of said Allen, 640 feet to the point of beginning."

(Emphasis added.) On April 25, 1973, the defendant Kristy Construction Corporation received title to the Jacobsons' land from an intermediate grantor. Kristy thereafter prepared a subdivision plan, dividing the Jacobson property and other property into four lots. The lot listed on the Kristy plan as Lot 4 is the same property as that described in the Jacobsons' deed and which was ultimately conveyed to the plaintiffs. The plan depicted the length of the Rineses' westerly boundary as 640 feet and the northerly boundary as 500 feet along what was shown to be a continuous stone wall roughly paralleling Gebig Road. It showed the Rineses' total acreage as 7.45 acres.

On April 21, 1976, Kristy conveyed Lot 4 to the plaintiffs by a deed containing a description of that property based on a survey by Kristy. Sometime within the next two years, the plaintiffs and the owners of the other three lots in the subdivision contacted the surveyor who had prepared the subdivision plan to advise him that there appeared to be an error. He agreed with the lot owners to resurvey the entire subdivision and to stake out the correct boundaries.

A new subdivision plan was prepared based upon the results of the new survey and was apparently accepted by the four lot owners. As depicted on the new subdivision plan, the Rineses' lot was reduced in size from 7.45 acres to 4.84 acres. This reduction was due to a shortening of the westerly boundary from 640 feet to 527 feet, based on the surveyor's determination that the boundary ended at a stone wall which ran easterly across the land. This stone wall was shown to be the Rineses' northerly boundary.

In December 1980, the plaintiffs filed a petition to quiet title, *see* RSA 498:5-a (Supp. 1979), against the Rineses, Kristy, and their other abutters. Before trial, the plaintiffs and the other abutters

stipulated to the location of their common boundaries. At a hearing before a Master (*Charles T. Gallagher*, Esq.) on the plaintiffs' petition, two expert witnesses testified that, in their opinion, the northerly boundary of the Rineses' property was the stone wall as depicted on the new subdivision plan. Without objection from either the plaintiffs or the Rineses, the master declined to view the property.

The master recommended that the stone wall be fixed as the northerly boundary of the Rineses' property, thereby making their westerly boundary 527 feet from Gebig Road to the stone wall. Citing the rule of construction that monuments prevail over courses and distances, *Chao v. The Richey Co., Inc.*, 122 N.H. 1115, 1117–18, 455 A.2d 1008, 1010 (1982); *Mastin v. Prescott*, 122 N.H. 353, 355, 444 A.2d 556, 558 (1982), the master rejected the Rineses' assertion that their westerly and northerly boundaries should be determined by reference to "640 feet" in both chains of title rather than by reference to the stone wall described in the parties' chains of title. The Superior Court (*Bean*, J.) approved the master's report and entered a decree accordingly, reforming the plaintiffs' deed from Kristy.

On appeal, the Rineses concede that the master's ruling with regard to their westerly boundary is correct. They contend, however, that the master erred in finding the location of their northerly boundary. The Rineses claim that a stone wall located to the northeast of the stone wall found by the master to be the northern boundary was actually intended to determine the northerly boundary of the property. The area in dispute is approximately 1.3 acres. (See diagram.)

■ The Rineses urge this court to reverse the superior court's decree for a number of reasons. First, they argue that if their northerly boundary was located where they suggest, the length of that boundary would be 510 feet. This length would be closer to the 500-foot length specified in both deeds given by the Cotes, the common grantors, than is the 586-foot length of the boundary as found by the master. This argument ignores the underlying rationale for the rule regarding the superiority of monuments, that "objects which are visible and permanent" are considered more reliable than courses and distances. 6 G. Thompson, Commentaries on the Modern Law of Real Property § 3044, at 576–77 (J. Grimes ed. 1962).

■ Second, the Rineses cite the fact that if their contention as to the proper boundary were accepted, their lot would contain 6.1 acres, which is closer to the reference in their chain of title to "six acres, more or less" than is the 4.84 acres which results from the northerly boundary found by the master. This argument disregards

the fact that, as one of the experts testified, area is the least reliable criterion for resolving ambiguities in deed descriptions. *Id.* at 576. The Rineses cite a number of other reasons supporting their position, none of which, independently or collectively, we find persuasive.

The master's report shows that he correctly recognized that the deeds should be interpreted in light of the parties' intentions. *Cooper v. Barilone,* 123 N.H. 203, 206–07, 459 A.2d 619, 621 (1983); *Chao v. The Richey Co., Inc.,* 122 N.H. at 1119, 455 A.2d at 1010. He also was correct in applying the rule that, in construing an ambiguous boundary description, monuments prevail over courses and distances. *Mastin v. Prescott,* 122 N.H. at 355, 444 A.2d at 558; *Seely v. Hand,* 119 N.H. 303, 305, 402 A.2d 162, 165 (1979). Determination of the location of a boundary is a question of fact, which will not be disturbed on appeal when supported by the evidence. *Chao v. The Richey Co., Inc.,* 122 N.H. at 1119, 455 A.2d at 1011; *Seely v. Hand,* 119 N.H. at 307, 402 A.2d at 166.

In this case, two experts testified that, in their opinion, the stone wall depicted on the new subdivision plan as being the northerly boundary of the Rineses' property was, in fact, the common boundary between the plaintiffs' and the Rineses' properties. This, in itself, was sufficient evidence for the master to find that the stone wall was the Rineses' northerly boundary.

In *Chao v. The Richey Co., Inc.,* we stated that "[t]he rule of construction of deeds that monuments prevail over courses and distances is an aid used to determine the intent of the grantor; it is not mandatory in the face of convincing proof of contrary intent." 122 N.H. at 1119, 455 A.2d at 1011. We thus upheld a master's findings that the intent of the parties in that case was best determined by reference to courses and distances, rather than a monument. This does not mean, however, that a trier of fact's finding as to the location of a boundary, when supported by evidence, will be reversed on the basis of other evidence, including courses and distances.

Finally, we do not consider this appeal to be frivolous, and we therefore deny the plaintiffs' request for attorney's fees pursuant to Supreme Court Rule 23.

*Affirmed.*

All concurred.

NORTH RIVER

PLAINTIFFS'
PROPERTY
(Lot 4)

Disputed area

510'

586'

North

527'

PLAINTIFFS'
PROPERTY
(Jacobsen)

DEFENDANTS'
PROPERTY
(Allen)

BIGART
(Jurgeson)

GEBIG ROAD